IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **WEDGETAIL, LTD. and BOBBY D. KING,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 2:07-CV-202 (DF)** |
| **v.** | § | |
| | § | |
| **HUDDLESTON DELUXE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |

## CLAIM CONSTRUCTION ORDER

Before the Court are the Patent Local Rule 4-3 Joint Claim Construction and Prehearing

Statement, each party's briefs related to Plaintiffs' asserted U.S. Patent No. 6,857,220 (the "'220

Patent"), and the parties' Joint Claim Construction Chart pursuant to P.R. 4-5(d).  Dkt. Nos. 36,

37, 38, 45, and 46, respectively.  A Markman Hearing was held on April 3, 2008.  *See* Markman

Hr'g Tr., Dkt. No. 50.

## I.  BACKGROUND

On May 22, 2007, Plaintiffs, Wedgetail, Ltd. ("Wedgetail") and Bobby D. King ("King"),

filed an action in this Court against Defendant Huddleston Deluxe, Inc. ("Huddleston") in the

Texarkana Division of the Eastern District of Texas.  Dkt. No. 1.  Plaintiff alleged infringement of

the '220 Patent.

A determination of patent infringement involves two steps.  First, the patent claims are

construed, and, second, the claims are compared to the allegedly infringing device.  *Cybor Corp. v.*

*FAS Techs., Inc.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998) (en banc).  The legal principles of claim

construction were reexamined by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.

Cir. 2005) (en banc).  The Federal Circuit in *Phillips* expressly reaffirmed the principles of claim

construction as set forth in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)

(en banc), *aff'd*, 517 U.S. 370 (1996), *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir.

1996), and *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111 (Fed.

Cir. 2004).  Thus, the law of claim construction remains intact.  Claim construction is a legal

question for the courts.  *Markman*, 52 F.3d at 979.

The Court, in accordance with the doctrines of claim construction which it has outlined in

the past, construes the claims of the '220 Patent as below.  *See Pioneer v. Samsung*, Civ. No. 2:07-

cv-170, Dkt No. 94 at 2-8[1] (E.D. Tex. filed Mar. 10, 2008) (claim construction order).

## II.  THE PATENT-IN-SUIT

Briefing was provided by the parties with regards to the '220 Patent entitled "Flexible fishing

lure tails and appendages," which issued on February 22, 2005.  The Abstract reads as follows:

> Flexible fishing lure tails and appendages having extending or projecting shoulder
> surfaces to facilitate a simulated swimming action by the drag and eddy principle
> of water flow. One or more shoulders are provided in the surfaces of the flexible
> fishing lure tails to facilitate the swimming action as the lure to which the tail or
> appendage is attached is retrieved through a water body. This swimming action
> due to the vibration of the tail and appendage segment and the body of the fishing
> lure is unique and simulates live lizards, worms, crawfish, grubs, minnows and
> the like, a primary characteristic that attracts fish. The tail and appendage
> segments can be removably or permanently fixed to both hard and soft body lures
> or molded in combination with a lure body of selected length, size, color and
> plastic composition characteristics to facilitate the desired swimming action and
> vibration and thus the attraction to game fish of every variety.

---

[1]Page numbers refer to the docket header page numbers.

There are only two claims in the patent, and they read as follows:

1. A fishing lure comprising: a lure body; a flexible tail neck extending from said lure body; a flexible forked tail portion extending from said flexible tail neck, said flexible forked tail portion having opposite, substantially symmetrical side surface and opposite, substantially symmetrical tail edges, said forked tail portion further comprising an upper fork extension, a lower fork extension and a central portion therebetween, said upper fork extension and said lower fork extension diverging from said central portion wherein said lure body and said forked tail portion each taper toward said tail neck, respectively, from a front and a rear of said tail neck; and a single rounded, solid, continuous and unbroken shoulder provided in each of said side surfaces of said flexible forked tail portion, said single rounded, solid, continuous and unbroken shoulder extending from said flexible tail neck to said tail edges of said flexible forked tail portion, and said single, rounded, solid, continuous and unbroken shoulder extending outwardly transverse to a longitudinal axis of said fishing lure from said upper fork extension, and downwardly and forwardly to said central portion, and then downwardly and rearwardly to the lower fork extension from said central portion on each of said side surfaces, said single shoulder having a convex shape throughout its entirety and said flexible forked tail portion being free of any grooves or pockets extending into said forked tail portion in a rearward direction along the axis of the fishing lure, for imparting vibration and a simulated swimming action to said flexible forked tail portion and said lure body responsive to retrieval of said fishing lure through a body of water.

2. A method for inducing vibration and a simulated swimming action in a flexible fishing lure, said method comprising the step of:

   providing a fishing lure comprising:

      a lure body;

   a flexible tail neck extending from said lure body; a flexible forked tail portion extending from said flexible tail neck, said flexible forked tail portion having opposite, substantially symmetrical side surfaces and opposite, substantially symmetrical tail edges, said forked tail portion further comprising an upper fork extension and a lower fork extension, and a central portion therebetween, said upper fork extension and said lower fork extension diverging from said central portion, wherein said lure body and forked tail portion each taper toward said tail neck, respectively, from a front and rear of said tail neck; and

   a single rounded, solid, continuous and unbroken shoulder provided in each of said side surfaces of said flexible forked tail portion, said single rounded, solid, continuous and unbroken shoulder extending

from said flexible tail neck to said tail edges of said flexible forked tail portion, and said single, rounded, solid, continuous and unbroken shoulder extending outwardly transverse to a longitudinal axis of said fishing lure from said upper fork extension and downwardly and forwardly to said central portion, and then downwardly and rearwardly to the lower fork extension from said central portion on each of said side surfaces, said single shoulder having a convex shape throughout its entirety and said flexible forked tail portion being free of any grooves or pockets extending into said forked tail portion in a rearward direction along the axis of the fishing lure, for imparting vibration and a simulated swimming action to said flexible forked tail portion and said lure body responsive to retrieval of said fishing lure through a body of water.

## III. CLAIM CONSTRUCTION - THE '220 PATENT

**A.** **"flexible forked tail portion having opposite, substantially symmetrical side surface[s] and opposite, substantially symmetrical tail edges"**

Wedgetail had previously argued that no construction was necessary while Huddleston provided a definition. Dkt. No. 46, Exh. A at 1. At the Markman Hearing the parties agreed that the term does not require construction. Markman Hr'g Tr. 24:11-16. Therefore, the Court finds that this term does not require construction.

**B.** **"Shoulder" phrases**

| Claim Language | Wedgetail's Proposed Construction | Huddleston's Proposed Construction |
|---|---|---|
| "a single rounded, solid, continuous and unbroken shoulder provided in each of said side surfaces of said flexible forked tail portion" | A single, curved ridge in each side surface of the flexible forked tail portion, that has no openings or breaks and that defines a boundary between each side surface of the tail neck and the rear face of the flexible forked tail portion. | Equipped in each side surface of the flexible forked tail portion is a rounded, solid projection that is without any openings or breaks or irregularities. |

-4-

| "extending from said flexible tail neck to said tail edges of said flexible forked tail portion" | No construction necessary - plain and ordinary meaning | Extending from the flexible tail neck to the rearmost borders of the flexible forked tail portion. The terms "flexible tail neck" and "flexible forked tail portion" have been construed above as part of another phrase. |
| --- | --- | --- |

Dkt. No. 46, Exh. A at 2.

**(1) Parties' Positions**

Wedgetail asserts that the primary difference in the parties' constructions is that Wedgetail construes the "shoulders" to "define a boundary between the side surfaces and the rear surface of the tail" whereas Huddleston proposes that the "shoulder" can be an "arbitrary projection that occurs anywhere on the side surface of the lure tail."  Dkt. No. 37 at 8.  Wedgetail refers to reference numeral 8 and associated sections in the specification to indicate that the shoulder 8 "is a line of demarcation between different contours in the tail surfaces."  *Id.* at 8-9 (citing '220 Patent, 6:8-12). Wedgetail contends that, in this instance, the patentee acted as his own lexicographer in stating that the protruding line "defines a boundary."  *Id.* at 9 (citing *Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1358 (Fed. Cir 2006)).  Wedgetail states that the context of the patent provides that the shoulder forms a boundary between the side and rear "in order to react to water pressure." *Id.* (citing '220 Patent, 6:9-13, 6:40-48, Figs. 1-2, 7-33 (reference numeral 8) and Figs. 3-6 (reference numeral 16).  Wedgetail states the dictionary definition of shoulder is "a steplike change in the contour of an object." *Id.* at 10 (citing Random House Webster's Unabridged Dictionary at 1771 (2001)). Wedgetail objects to Huddleston's construction of "'projection' without any relation to the overall

structure or other parts of the tail" as well as the phrase "without any . . . irregularities" as not having any support in the intrinsic evidence." *Id.*

Huddleston explains that the prosecution history resulted in multiple disavowals to limit the region in which the shoulder is located.  Huddleston explains that the first amendment disavowed the region around the tail edge as the location of the shoulder over the U.S. Patent No. 5,193,299 ("Correll Patent") prior art.  Dkt. No. 38 at 6 (citing Dec. 8, 2002 Office Action at WDGT000102).  Huddleston states that the second amendment "narrowed the claim to require the shoulder be a region expanding from tail neck to tail edges," distinguishing over U.S. Patent No. 4,317,305 ("Firmin Patent") and U.S. Patent No. 3,879,882 ("Rask Patent").  *Id.* at 8 (citing May 13, 2003 Office Action at WDGT000117-118 & WDGT000127-129).  Huddleston then states the applicant limited the claim to a "rounded, solid, continuous and unbroken" shoulder, distinguishing over Firmin, Rask, and U.S. Patent No. 2,847,791 ("Simmons Patent").  *Id.* at 9-10 (citing May 24, 2004 Amendment at WDGT000158-160).

Huddleston responds that the main dispute is the location of the "shoulder" but that Wedgetail's understanding of the "shoulder" as a "boundary" or "line of demarcation" is incorrect because a "region that extends from the tail neck to the tail edge along the side surface of the tail is not and cannot be a line" but rather must be a "surface area." Dkt. No. 38 at 12.  Huddleston states that a boundary cannot be between a side surface of the tail neck and the rear face of the flexible forked tail portion.  *Id.* at 16.  Huddleston states that if the shoulder defines the boundary between the neck extension of the tail neck and the rear surface, then this would cover the same area as the flexible forked tail portion which extends from said flexible tail neck.  *Id.*  Huddleston argues that the patentee distinguished the Correll Patent by citing that the element the examiner deemed

anticipating, reference numeral 14, appeared only on the lower edge of the tail portion and thus could not be a tail shoulder.  *Id.* at 18 (citing WDGT000113, Dkt. No. 43, Exh. B at 75). Huddleston states that the shape of the shoulder is described as a "projection" in the patent and is "unbroken" and "continuous."  *Id.*

Wedgetail responds that the patentee did not make the disavowals as argued by Huddleston. Regarding Correll, Wedgetail states that the patentee did not disavow the tail edge because it is unclear from the Correll figure which location was disavowed.  Dkt. No. 45 at 3.  Wedgetail states that all that can be concluded is that "a disk 'separate' from the tail portion - as in the Correll reference - is not the same as a shoulder 'in' a tail portion - as in the '220 patent claims."  *Id.*

Wedgetail states that the shoulder is not an "area" or does not "encompass a region."  Dkt. No. 45 at 4.  Wedgetail argues that the word "region" or "area" does not appear in the specification and there is no clear disavowal in the prosecution history.  *Id.*  Wedgetail explains that a shoulder can be a line but still have forward and rear edges.  *Id.* at 5.

Wedgetail's primary contention with Huddleston's construction of the "extending from said flexible tail neck to said tail edges of said flexible forked tail portion" is the construction of the term "tail edges."  Dkt. No. 37 at 17.  Wedgetail argues that the claims, at one point, included the top and bottom tail edges specifically in the claims.  *Id.*  Huddleston responds that these references were deleted to distinguish over the prior art.  Dkt. No. 38 at 14 (citing WDGT000127-129).  Wedgetail responds that "it is axiomatic that amending a claim to remove a limitation has the effect of **broadening** the claim, not narrowing it."  Dkt. No. 45 at 9 (citing *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 693-94 (Fed. Cir. 1997)).  Wedgetail also argues that the applicant's statement does not merely imply that the edges are in the rearmost borders.  *Id.*

-7-

### (2) Court's Construction

The Court construes the two "shoulder" phrases together because they can only be understood in the context of each other.  The Court first discusses the phrase "a single rounded, solid, continuous and unbroken shoulder provided in each of said side surfaces of said flexible forked tail portion."  Wedgetail states that "single is a single."  Markman Hr'g Tr. 12:11.  Huddleston's definition does not contain this limitation, though there does not appear to be any dispute regarding this matter.  Since limitations should not be excluded when they are explicitly in the claim language, the Court will include the word "single" in the construction of the term.  This is true for the word "solid" which was found in Huddleston's construction but lacking in Wedgetail's proposed construction.  There is no reason to exclude the limitation, thus the Court keeps the term "solid" which it finds would be easy to understand by a jury.

Wedgetail states that it uses the word "curved" instead of "rounded," though Wedgetail agrees that they mean the same thing.  Markman Hr'g Tr. 12:11-13.  Huddleston uses the term "rounded" from the claim language.  Rather than using a synonymous word that does not add any benefit to the construction, the Court uses the term "rounded."

The parties dispute the limitation of "continuous and unbroken."  Wedgetail argues that this means "no openings or breaks" while Huddleston's construction states "without any openings or breaks or irregularities."  Wedgetail argues that the term "irregularity" is not found in the specification or the file history.  Markman Hr'g Tr. 15:7-9.  Wedgetail concedes that the phrase "continuous and unbroken" were added to avoid two prior art patents with forward-facing cups, specifically the Simmons and Firmin patents.  Markman Hr'g Tr.  15:11-16:15.  Huddleston contends that the word "continuous has a separate meaning from unbroken."  Markman Hr'g Tr.

41:4-5.  Huddleston argues that "continuous" means "without irregularities."  However, the Court finds there is no support for the construction of irregularities or any indication as to what would constitute an "irregularity."  However, the parties agree that the shoulder cannot have an "opening" or "break" and that this would include any type of cup-shaped features.  Therefore, the Court declines to adopt the term "irregularity."

For the next word in the phrase, "shoulder," the Court considers the suggested use of "ridge" versus "projection."  Wedgetail disagrees with the term "projection" because it is duplicative when viewed in light of the "extending outwardly" phrase.  Markman Hr'g Tr. 16:19-17:3.  However, Wedgetail does not explain why a "ridge" would not be equally duplicative.  The word "ridge" is not found anywhere in the specification.  The word "projection," on the other hand, is mentioned several times, often synonymously with "shoulder."  For example, the specification describes the tail portions fitted with "shoulder segments or projections" ('220 Patent, 2:6), a lure tail with "shoulder projections" ('220 patent, 2:13), and a tail with a "raised projection or shoulder" ('220 Patent, 2:23) among many others.  Therefore, the Court adopts the use of "projection."

The parties dispute the construction of "provided in each of said side surface."  There is no dispute that a shoulder is in "each of said side surface."  Wedgetail objects to Huddleston's use of the word "equipped."  Huddleston agreed that "equipped" meant the same thing as "provided."  Since Huddleston agrees that "equipped" is synonymous with "provided," the Court does not find a need to add further ambiguity by replacing "provided" with "equipped."  In fact, Wedgetail's construction simply doesn't use the word "provided" and states that there is a "ridge in each side surface."

The majority of the briefing and oral argument related to Wedgetail's proposed construction that the shoulder "defines a boundary between each side surface of the tail neck and the rear face of the flexible forked tail portion."  Wedgetail finds support in the specification which states that the "forked tail shoulder 8 defines the boundary between the rear curved margin of a neck extension or appendage 9a of the tail neck 9 and the complementary front curved margin of a concave tail fork 10." '220 Patent, 6:9-13.  Exemplary figures are shown below.



As such, Wedgetail contends that the patentee acted as his own lexicographer.  *Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1358 (Fed. Cir. 2006).  It is with these doctrines and figures in mind that the Court construes the claim.  The Court seeks to find a construction that is not only consistent with the specification and the language of the other limitations, but also does not

exclude any of the embodiments of the claims.  *See SanDisk Corp. v. Memorex Prods., Inc.*, 415

F.3d 1278, 1285 (Fed. Cir. 2005).

Huddleston contends that a boundary is a single line while the shoulder must be a region.

However, the region that Huddleston proposes is embodied by the entire region between the

neck and the rear edges of the terminating fork.  The Court finds that the parties' determinations

are not necessarily mutually exclusive.  A region is essentially a bounded area.  The Court also

finds that the shoulder is not merely a line, as the language clearly describes a specifically

bounded three-dimensional area, including a projection that extends from one area to another and

is in the side surface.  At least from a two-dimensional perspective, Huddleston contends that the

shoulder can extend from the tail neck to the tail edge, which could be the rearmost edge or the

top and bottom edges.  Huddleston can hardly argue that the shoulder is merely a line and not a

region.  Thus, the Court agrees with Huddleston and finds that a shoulder is an area, rather than a

single line, but the Court also agrees with Wedgetail that the patentee acted as his own

lexicographer.  Therefore, part of the region encompassed by the shoulder acts as a boundary as

defined by the specification.

The Court construes "a single rounded, solid, continuous and unbroken shoulder

provided in each of said side surfaces of said flexible forked tail portion" to mean "a single,

rounded, solid projection in each side surface of the flexible forked tail portion, without any

openings or breaks and that covers a region, part of which defines the boundary between the rear

curved margin of a neck extension or appendage of the tail neck and the complementary front

curved margin of a concave tail fork."

The shoulder is also "extending from said flexible tail neck to said tail edges of said flexible forked tail portion."  The primary contention of this term is the phrase "tail edges," which Huddleston limits to be the "rearmost borders of the flexible forked tail portion." Wedgetail contends that the tail edges can include the top and bottom edges of the tail. Wedgetail states that the second amendment lends support that the top and bottom edges are excluded.  Claim 30, which resulted in claim 1, was amended by the applicant by replacing "top and bottom tail edges" with "substantially symmetrical tail edges."  Sept. 15, 2003 Amendment, WDGT000127, Dkt. No. 43, Exh. B at 86.  In the "Remarks," the applicant stated that the amendment in claim 30 was made to overcome the Rask Patent because the "Rask tail is not symmetrical."  Sept. 15, 2003 Amendment, WDGT000132, Dkt. No. 43, Exh. B. at 91.  "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."  *Omega Eng'g, Inc. v. Raytec Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003).  Applicant's amendment does not indicate that the tail edges do not include the top and bottom, rather they merely overcome the prior art by arguing that the prior art is not substantially symmetrical.  The amendment thus does not preclude top and bottom edges.

Huddleston states that the applicant's explanation that the "enlarged tail portion extends on the side surface, to the tail edges, between a narrow neck portion and the terminating fork of the lure" means that the "tail edges only refer to rearmost border."  Dkt. No. 38 at 15 (citing Sept. 15, 2003 Amendment, WDGT000130, Dkt. No. 43, Exh. B at 89).  The Court determines that this statement does not restrict tail edges to only the rearmost border.  Just as the Court was not convinced by Wedgetail's argument that the shoulder is merely a line or boundary, the Court

similarly rejects Huddleston's argument that the shoulder extends only in a horizontal direction

to the rearmost edges.  Rather, the Court finds that shoulder may extend in all directions,

including to the top and bottom tail edges.

Therefore, the Court construes "extending from said flexible tail neck to said tail edges of

said flexible forked tail portion" to mean "extending from the flexible tail neck to the tail edges

(including the top, bottom, or rearmost borders) of the flexible forked tail portion."

**C.    "extending outwardly transverse to a longitudinal axis of said fishing lure from said upper fork extension."**

| Wedgetail's Proposed Construction | Huddleston's Proposed Construction |
|---|---|
| Projecting outwardly from the upper fork extensions, i.e. cross-wise to the longitudinal axis of the fishing lure when looking at the fishing lure from the top.  The longitudinal axis is a centerline that runs between the head and the tail of the fishing lure. | Huddleston argues that this phrase is indefinite and cannot be construed because the written description is ambiguous and inconsistent, and thus a person of ordinary skill in the art cannot know what this phrase means based on the information in the written description. |

Dkt. No. 46, Exh. A at 2-3.

**(1) Parties' Positions**

Wedgetail states that the written description shows that the "shoulder 8 extends outward

from the fishing lure, in a direction that is cross-wise to the axis that runs from the head to the

tail of the lure, *i.e.*, the 'longitudinal axis.'" Dkt. No. 37 at 12 (citing '220 Patent, 6:4-9, Figs. 1

& 2).  Wedgetail states that the specification describes that the "shoulder 'extends transversely

across' the width of the tail portion." *Id.* (citing '220 Patent, 6:55-66).  Wedgetail provides

dictionary definitions for "longitudinal" ("pertaining to or extending along the long axis of the

body, or the direction from front to back, or head to tail") and "transverse" ("lying or extending

across or in a cross direction").  *Id.* at 13 (citing Random House Webster's Unabridged

Dictionary at 1133 (2001); Webster's Unabridged Dictionary at 2013 (2001)). Wedgetail states that a claim is not ambiguous "merely because it poses a difficult issue of claim construction." *Id.* at 14 (quoting *Bancorp Servs., L.L.C. v. Hartford Life Ins. co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004)). Wedgetail argues that there is nothing that indicates the terms to deviate from their ordinary meaning. *Id.* at 15 (citing *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999)).

Huddleston argues that the term is ambiguous because in Figures 8, 10, and 12 of the '220 Patent, the shoulder 8 is not "extending outwardly transverse" from upper fork extension 11. Dkt. No. 38 at 20. Huddleston argues that the shoulder extends along the longitudinal axis of the fishing lure. *Id.* Huddleston contends that this Figure is inconsistent with that of Figure 2 and provides a comparison of the two (shown below). *Id.*





Wedgetail argues that the "direction of extension **cannot be determined** from a top-view cross-section." Dkt. No. 45 at 6. Wedgetail contends that "Huddleston has failed to carry its burden in establishing indefiniteness by clear and convincing evidence." *Id.* (citing *Datamize v. Plumtree Software Inc.*, 417 F.3d 1342, 1347-48 (Fed. Cir. 2005)).

**(2) Construction**

The Federal Circuit explained in *Datamize* that definiteness "does not compel absolute clarity," rather, recognizing the statutory presumption of validity, a claim term is definite so long as it is discernible.  *Datamize*, 417 F.3d at 1347.  A claim is indefinite if it does not "reasonably apprise those skilled in the art of its scope." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 450 F.3d 1377, 1383-84 (*Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1217 (Fed. Cir. 1991)). The level of precision required to define the scope "is a function of the nature of the subject matter." *Miles Lab. v. Shandon, Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993) (citing *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1385 (Fed. Cir. 1986)).

Here, due to the subject matter and the description provided, the scope of the phrase is readily apparent.  The plain meaning of longitudinal axis would be understood by one of ordinary skill in the art to be the line that passes from the head to the tail and perpendicular to this axis would be transverse direction, in other words, the lateral direction or axis.  Huddleston does not contest the clarity of the location, i.e. "from said upper fork extension."  Huddleston's only objection is that Figures 8, 10, and 12 are inconsistent with Figure 2.  Figure 2 is a "top view of the forked tail lure" while Figures 8, 10, and 12 are sectional views.  In reference to Figures 1 and 2, the specification explains that the "shoulder 8 extends along both sides of the forked tail portion 7 transverse to the longitudinal axis of the forked tail lure 1 . . . and protrudes in a lateral direction from the longitudinal axis of the forked tail lure 1." '220 Patent, 6:4-9.  The lateral direction from the longitudinal axis would be a line that is perpendicular.  Huddleston contends that the direction from 11 to 8 on Figure 8 is parallel to the longitudinal axis; however, reference 11 is not mentioned in the "extending outwardly transverse" phrase.  Rather, the specification describes the "forked tail shoulder 8 extends rearwardly along a pair of fork

extension curvatures 11a to define a pair of fork extensions 11." '220 Patent, 6:14-16.  The

Court finds that this phrase is more relevant to Huddleston's example figure of the direction from

11 to 8 being parallel to the longitudinal axis; however, this phrase is discussed in another

disputed term.  The Court finds that there is not an inconsistency in Wedgetail's proposed

direction for "transverse."

Therefore, the Court construes "extending outwardly transverse to a longitudinal axis of

said fishing lure from said upper fork extension" to mean "Projecting outwardly from the upper

fork extensions, i.e. cross-wise to the longitudinal axis of the fishing lure when looking at the

fishing lure from the top.  The longitudinal axis is a centerline that runs between the head and the

tail of the fishing lure."

**D.    "a flexible tail neck extending from said lure body"**

| Wedgetail's Proposed Construction | Huddleston's Proposed Construction |
|---|---|
| No construction necessary - plain and ordinary meaning | A narrower area that is capable of being bent extending from the lure body and connecting to the forwardmost boundary of the tail. |

Dkt. No. 46, Exh. A at 1.

**(1) Parties' Positions**

Wedgetail's opposition with Huddleston's proposed construction lies in the latter phrase

stating "and connecting to the forwardmost boundary of the tail."  Dkt. No. 37 at 16.  Wedgetail

simply argues that the additional limitations "are not found in the claims, specification or

prosecution history."  *Id.*

Huddleston responds that specification teaches that the tail neck is a narrowed area that is

connected to or formed with the body.  Dkt. No. 38 at 13 (citing '220 Patent, 1:27-32).

Huddleston states that the Examiner-Initiated Interview Summary specifically recited that the

neck is between the body and the forked tail portion and "these two parts taper toward the tail

neck from opposite sides." *Id.* (citing WDGT000178).  Huddleston concludes that the tail neck

extends from the body on one side and the forwardmost boundary of the tail portion on the other.

*Id.*

Wedgetail argues that the word "connected" is inappropriate because it changes the scope

of the claims.  Dkt. No. 45 at 7 (citing *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347

(Fed. Cir. 2000)).  Wedgetail argues that the tail may be attached or molded integrally with a

fishing lure body.  *Id.* at 8 (citing '220 Patent, 2:16-17).  Wedgetail states that Figure 1 depicts a

lure that is "molded integrally" while Figure 30 shows a lure that is attached via a "tail

connector."  *Id.*

At the Markman Hearing, Wedgetail also took issue with the term "forwardmost

boundary."  Markman Hr'g Tr. 23:18-22.  At the hearing Wedgetail stated that the tail neck did

not need to be a narrower portion and could be of selective thickness.  Markman Hr'g Tr. 24:1-

10.  Huddleston offered to drop the phrase "and connecting to the forwardmost boundary of the

tail," choosing to focus on the location of the tail neck and that it is a "narrower area that is

capable of being bent extending from the lure body."  Markman Hr'g Tr. 47:11-18.

**(2) Construction**

Huddleston offered to drop the term "connecting" leaving two issues before the Court:

(1) whether the tail neck is "narrower" and (2) whether the tail neck is molded or attached to the

forwardmost boundary of the tail.

The Court first looks to the claim language.  For example, claim 1 recites a "lure body," a

"flexible tail neck extending from said lure body," and a "flexible forked tail portion extending

from said flexible tail neck." '220 Patent, 12:50-53.  Normally, the Court finds that this term

would be understandable by a jury and would require its plain and ordinary meaning; however,

the Federal Circuit's decision in *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521

F.3d 1351 (Fed. Cir. 2008) has given this Court, and other courts in this district, pause before

simply ruling that a term may have its plain and ordinary meaning.  *See Grantley Patent*

*Holding, Ltd. v. Clear Channel Communications, Inc.*, No. 9:06-cv-259 (RC), Dkt. No. 188

(E.D. Tex. April 21, 2008) (order supplementing claim construction order).

Wedgetail focuses on the location of the tail neck.  In the Examiner-Initiated Interview

Summary, the Examiner states:

> Examiner proposed amending claim 30 [issued claim 1] to more particularly
> recite the structure and location of the tail neck relative to the body and forked tail
> portion such that it is between these two parts and these parts taper toward the tail
> neck from opposite sides.

Examiner Interview of September 20, 2004, WDGT000178, Dkt. No. 43, Exh. B at 115.

The claim language states that the "lure body and said forked tail portion each taper

toward said tail neck, respectively, from a front and a rear of said tail neck."  *See* '220 Patent,

12:59-61.  While the section of the specification cited by Huddleston is not relevant, as it

pertains to the field of the invention and not the patent's actual claimed invention, the Court

finds that each figure of the patent shows a narrowed neck 9.  As stated by Wedgetail, the

specification teaches that the forked tail necks may be of varying thickness and length.  '220

Patent, 6:18-19, 7:44.  The specification also provides that the tail neck may be either attached or

integrally molded with the tail portion.  '220 Patent, 2:16-17.

Thus, the Court finds that the claim language provides that the neck is "narrower" in

relation to the tail portion on one end and the lure body on the other, although the degree that it

is "narrow" may vary.  The focus by Wedgetail is on the location of the tail neck as being between the lure body and the forked tail portion.  In addition, while the specification does not provide the term "forwardmost boundary of the tail," it is evident that the tail neck is not connected to any other portions of the tail, such as the rear or middle of the tail. However, it is readily apparent that if the tail neck is between the tail portion and the lure body, that it must be extending from the lure body and attached to or molded to the front of the tail portion.

There is no disagreement that the tail neck is flexible or that "capable of being bent" is not an appropriate synonym for flexible.  However, the Court finds no reason to replace "flexible" with "capable of being bent" as "flexible" would be easily understood by the jury. The Court notes that the parties had previously agreed that "flexible forked tail portion having opposite, substantially symmetrical side surface[s] and opposite, substantially symmetrical tail edges," which contained the word "flexible" was not found to be confusing or require construction.

Therefore, the Court construes the term "a flexible tail neck extending from said lure body" to mean "A flexible area that is narrower than the lure body and the flexible forked tail portion and is located between the lure body and flexible forked tail portion"

**E.  "having a convex shape throughout its entirety"**

| Wedgetail's Proposed Construction | Huddleston's Proposed Construction |
|---|---|
| No construction necessary - plain and ordinary meaning. | Every part of the shoulder has an outer surface that is rounded outwardly and is never flat or rounded inwardly. |

Dkt. No. 46, Exh. A at 3.

**(1) Parties' Positions**

Wedgetail's primary objection to Huddleston's construction is that the shoulder is "never flat" or "never . . . rounded inwardly." Dkt. No. 37 at 18.  Wedgetail argues that these limitations are not in the intrinsic evidence.  *Id.*; Dkt. No. 45 at 10.

Huddleston responds that the specification provides that the shoulder must be "round rather than squared off." Dkt. No. 38 at 19 (citing '220 Patent, 12:35-38).  Huddleston cites to a unknown dictionary that supports the definition of "convex" to mean "being never flat or rounded inwardly but only rounded outwardly." *Id.* (citing Dkt. No. 43, Exh. I).  Huddleston contends that "throughout its entirety" means "every part of the shoulder has to be convex" and is consistent with the definition of the "tail portion being free of any grooves or pockets." *Id.* Huddleston argues that this is consistent with the patentee distinguishing over the Firmin and Simmons patents. *Id.*

**(2) Construction**

Wedgetail describes that, in the May 24, 2004 amendment, the applicant distinguished over the Simmons patent and Firmin patent, stating that the Simmons patent disclosed "forwardly-disposed cups or pockets" or "open, cupped pockets" and the Firmin patent disclosed "forwardly-cupped members." *See* Dkt. No. 37 at 6; May 24 Amendment, WDGT000162, Dkt. No. 43, Exh. B at 105.  In this amendment, the applicant added the underlined words to claim 30, which became issued claim 1: "rounded solid, continuous and unbroken shoulder." May 24, Amendment, WDGT000158, Dkt. No. 43, Exh. B at 101.  At this time, the amendment did not contain the "being free of any grooves or pockets" phrase or the "having a convex shape" phrase. The "having a convex shape" was added by the Examiner in an Examiner's Amendment with the Notice of Allowance. Dkt. No. 43, Exh. B at 109-111.  In the Examiner-Initiated Interview

Summary, the Examiner explained that the phrase relating to the shoulder extending to the fork extensions was added in order to overcome Rask, "since its shoulder (45) only extends along the axis of the lure and does not extend along the fork extensions as proposed," and Firmin, since it "does not have the shoulder on the forked tail portion."  Dkt. No. 43, Exh. B at 115.  Therefore, the Examiner did not explain why it also added the "having a convex shape throughout its entirety" within this phrase.

Thus, the Court considers the plain and ordinary meaning as well as the applicant's amendment to overcome the Simmons and Firmin Patent.  Based on the plain meaning and the claim language, the shoulder "having a convex shape throughout its entirety" is consistent with the "rounded solid, continuous and unbroken shoulder."  As explained above in the "shoulder" phrases, the "unbroken" shoulder is without "openings" or "breaks" and this is continuous across the shoulder and throughout its entirety.  The "solid, continuous, and unbroken" phrase was also added to overcome the forward-facing cups in the Simmons and Firmin Patents.  However, the applicant did not limit the phrase to merely the forward facing cups, as it clearly knew how to do in the next term.

The Court finds the latter half of Huddleston's suggested construction, "never flat or rounded inwardly," to be superfluous.  Even its own dictionary definition does not have this suggested limitation, defining "convex" to mean "Having a surface or boundary that curves or bulges outward, as the exterior of a sphere."  Dkt. No. 43, Exh. I.

Therefore, the Court construes "having a convex shape throughout its entirety" to mean "Every part of the shoulder is rounded outwardly, and is free from openings, breaks, or grooves."

**F.**     **"said flexible forked tail portion being free of any grooves or pockets extending into said forked tail portion in a rearward direction along the axis of the fishing lure"**

| Wedgetail's Proposed Construction | Huddleston's Proposed Construction |
|---|---|
| No construction necessary - plain and ordinary meaning. | Flexible forked tail portion contains no indentation or recess extending in the direction toward the rearmost borders of the tail. |
| | The antecedent basis for the term "said flexible forked tail portion" has been construed above as part of another phrase. |

Dkt. No. 46, Exh. A at 3.

**(1) Parties' Positions**

Wedgetail contends that "being free of" is a negative limitation, which would ordinarily

broaden a claim, but Huddleston's construction actually narrows the claim because it removes

the phrase "into said forked tail portion" from the claim language.  Dkt. No. 37 at 19.  Wedgetail

states that this term was added to overcome the Simmons Patent, but the Simmons Patent

contains grooves extending rearwardly into the tail portion as well as ornamental surface

grooves, shown in Simmons Patent Figure 1 as a "series of six ray-like lines."  *Id.* at 20.

Wedgetail explains that these ornamental grooves "extend only along the **surface of the tail**

**portion,** not rearwardly **into the tail portion."**  *Id.* (emphasis in original).  Wedgetail states that

when the applicants distinguished over the Simmons Patent to be free of any grooves, "they

recognized the distinction between the groove 11 extending rearwardly **into the tail portion** and

the ornamental grooves extending only along the **surface of the tail portion**."  *Id.* at 20-21

(emphasis in original).  Wedgetail objects to Huddleston's construction because "no fishing lure

could possibly infringe the claim, so long as it has ornamental grooves."  *Id.* at 21.

Huddleston argues that the forked tail portion "must be free of any groove or pocket, regardless of depth." Dkt. no. 38 at 21. Huddleston avers that free of any grooves means all grooves are excluded from the forked tail. *Id.* Huddleston states that Wedgetail's interpretation of the six ray-like lines of the Simmons Patent is pure conjecture. *Id.* at 22. Huddleston states that the "surface grooves" in the side surface of the forked tail portion would have to be on the shoulder, thus "surface grooves" are also not allowed on the shoulder or the forked tail portion. *Id.* at 23. Huddleston states that its definition does not exclude "into said forked tail portion" because any groove is inherently indented into the forked tail portion. *Id.* at 24.

Wedgetail responds that Huddleston's position is misleading because it does not address the "rearward direction along the axis of the fishing lure." Dkt. No. 45 at 11. Wedgetail states that the tail must be free from groves that are "extending into said forked tail portion" and "in a rearward direction along the axis of the fishing lure." *Id.*

### (2) Construction

Like the "having a convex shape" phrase, this term was added by the Examiner in the Examiner's Amendment. However, the Examiner specifically explained how this added phrase overcame the prior art. In the Examiner-Initiated Interview Summary, the Examiner explains:

> The Examiner also suggested amending claim 30 [issued claim 1] to recite that the forked tail portion being free of any grooves or pockets extending into the forked tail portion in a rearward direction along the axis of the lure in order to overcome the Simmons patent which discloses the grooves or pockets (11) extending into the forked tail portion (7) in a direction along the axis of the lure.

Dkt. No. 43, Exh. B at 115.

Thus, when suggesting this phrase, the Examiner specifically had in mind the forward-facing pockets of the Simmons patents that extended in the direction along the axis of the lure.

The Examiner was not suggesting this phrase to overcome any and all grooves that were in the tail.  The Examiner specifically phrased the limitation as "grooves or pockets extending into said forked tail portion in a rearward direction along the axis of the fishing lure," wherein the phrase "extending into said forked tail portion in a rearward direction along the axis of the fishing lure" modified the terms "grooves or pockets."

Therefore, the Court construes the term "said flexible forked tail portion being free of any grooves or pockets extending into said forked tail portion in a rearward direction along the axis of the fishing lure" to mean "Flexible forked tail portion contains no indentation or recess extending in rearward direction along the axis of the fishing lure."

## IV.  CONCLUSION

Accordingly, the Court hereby **ORDERS** the disputed claim terms construed consistent herewith.

**SIGNED this 2nd day of July, 2008.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE